FILED
SEP 17 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA, <br> DOJ <br> 1301 New York Ave. N.W. <br> #200 <br> W.D.C. 20005 <br>                              Plaintiff, <br> v. <br> MARTIN HARTMANN, <br>                              Defendant. | Case: 1:07-cv-01640 <br> Assigned To : Sullivan, Emmet G. <br> Assign. Date : 9/17/2007 <br> Description: General Civil |

## COMPLAINT

Plaintiff, the United States of America, by and through its attorneys, for its complaint herein alleges as follows:

### I. JURISDICTION AND VENUE

This is an action pursuant to Section 340(a) of the Immigration and Nationality Act of 1952, as amended ("INA"), 8 U.S.C. § 1451(a), to revoke the citizenship of Defendant Martin Hartmann ("Defendant"), to set aside the Order of the United States District Court for the District of Montana, dated January 13, 1961, admitting Defendant to United States citizenship, and to cancel Certificate of Naturalization No. 7974241, issued to Defendant pursuant to that order.

1. Plaintiff is the United States of America.

2. Defendant is a natural person who is not present in the United States.

3. Jurisdiction is conferred upon this Court by 28 U.S.C. § 1345 (except as otherwise provided by Act of Congress, the District Courts shall have original jurisdiction of all civil actions commenced by the United States) and by INA § 340(a), 8 U.S.C. § 1451(a) (an action to revoke citizenship may be brought in the District of Columbia if the naturalized citizen does not

reside in any judicial district).

4.  Venue is proper in this District under INA § 340(a), 8 U.S.C. § 1451(a) (an action to revoke citizenship may be brought in the District of Columbia if the naturalized citizen does not reside in any judicial district).

5.  As required by INA § 340(a), 8 U.S.C. § 1451(a), an affidavit showing good cause for this action is attached as Exhibit A.

## II. FACTS

**A.   Defendant's Activities Before and During World War II**

6.  Defendant was born on October 31, 1918, in Metiş (German: Martinsdorf) Romania.

7.  On July 27, 1943, Defendant entered the Nazi Waffen SS (Armed SS), receiving the rank of SS *Schütze* (private).

8.  In 1946, the International Military Tribunal at Nuremberg, Germany, held that the SS, including the Waffen SS, constituted a criminal organization involved in "the persecution and extermination of the Jews, brutalities and killings in concentration camps, excesses in the administration of occupied territories, the administration of the slave labor program and the mistreatment and murder of prisoners of war." *The Nuremberg Trial*, 6 F.R.D. 69, 143 (I.M.T. 1946).

9.  Upon entering the Waffen SS on July 27, 1943, Defendant was assigned to the 9th Company of the SS Death's Head Guard Battalion (*Totenkopf-Wachbataillon*) at Sachsenhausen Concentration Camp (also known as "Oranienburg Concentration Camp") near Berlin, Germany, where he served as an armed guard of prisoners. He continued to serve at Sachsenhausen and its

sub-camps through at least April 1945.

10.     Sachsenhausen Concentration Camp was a place of persecution. Sachsenhausen, like other Nazi concentration camps, was guarded by members of SS Death's Head guard units. While guarding concentration camps, members of the SS Death's Head guard units personally assisted the Nazi government of Germany in persecuting persons because of race, religion, national origin, or political opinion. This persecution included, but was not necessarily limited to, forcible confinement, subjection to slave labor, deprivation of adequate food, shelter, and medical care, physical and emotional abuse, medical experimentation, torture, and killing.

11.     The Sachsenhausen Concentration Camp contained work facilities where prisoners were forced to perform various types of difficult physical labor under grueling conditions. The complex also housed a crematorium, a gas chamber, a shooting pit used by firing squads, and a gallows, all of which were used for executing prisoners.

12.     During the period of Defendant's service there, tens of thousands of persons were imprisoned at Sachsenhausen Concentration Camp because of their religion, national origin, race, or political opinion and thousands died or were murdered there. Starvation and disease were rampant among the prisoner population at Sachsenhausen due to inadequate food and unsanitary conditions.

13.     Sachsenhausen prisoners deemed too ill or too weak to work were killed or transferred to other camps to be killed. Many Sachsenhausen prisoners were murdered by shooting, hanging, gassing, beating, and other means. The camp was also the site of a variety of gruesome medical experiments that killed many prisoners.

14.     At Sachsenhausen Concentration Camp, the duties of a camp guard included

guarding the perimeter of the camp, guarding labor details outside the camp, escorting prisoners to and from forced labor worksites, and conducting searches for escaped prisoners. Armed SS Death's Head guards were stationed in guard towers and as sentries around the perimeter of the camp and had orders to shoot to kill any prisoner attempting to escape. All guards were trained in and responsible for these duties.

15. The SS Death's Head Guard Battalion guarded Sachenhausen's main camp and its many subcamps including the Klinkerwerk facility located in nearby Lehnitz. The Klinkerwerk was one of Sachsenhausen's largest sub-camps, originally intended to be the largest brick factory in the world. Forced labor service at the Klinkerwerk became notorious as a punishment detail for Sachsenhausen prisoners accused of violating camp rules, as well as for members of disfavored groups, including Jews and homosexuals.

16. The Defendant, armed with a rifle, stood guard over the Klinkerwerk, manned its watchtowers and operated its main gate, through which prisoners from the main camp entered and left.

17. The Defendant also performed armed guard service at Sachsenhausen's Babelsberg subcamp.

18. In or around April 1945, the Defendant personally escorted several prisoners in transit from Babelsberg back to Sachsenhausen, guarding them by himself.

19. As a member of the SS Death's Head Guard Battalion Sachsenhausen, Defendant wore a uniform, was paid, and was allowed to leave the camp when not on duty.

20. By performing armed guard duty at the Klinkerwerk, Babelsberg, and elsewhere at Sachsenhausen, Defendant personally assisted the Nazi Government of Germany in persecuting

persons because of race, religion, or national origin.

**B.  Defendant's Immigration to the United States**

21.  In September 1955, Defendant applied for an immigration visa under the Refugee Relief Act (RRA) of 1953, Pub. L. No. 203, 67 Stat. 400, as amended, 68 Stat. 1044 (1954), at the U.S. Consulate in Berlin, Germany.

22.  When he applied for a visa, Defendant was questioned by immigration officials about his wartime activities and whereabouts. Defendant did not disclose his guard service at Sachsenhausen. Defendant also failed to list his Sachsenhausen service or membership in the Waffen SS on his visa application form.

23.  On September 27, 1955, Defendant was issued a visa under the RRA.

24.  On October 28, 1955, Defendant, used his RRA visa to enter the United States at the Port of New York as an immigrant.

**C.  Naturalization**

25.  On November 2, 1960, Defendant petitioned for naturalization as a United States citizen, in Helena, Montana.

26.  On January 13, 1961, Defendant was naturalized by the District Court of the First Judicial District in Helena, Montana, and received Certificate of Naturalization No. 7974241.

### III. LAW

27.  INA Section 340(a), 8 U.S.C. § 1451(a), provides for the revocation of a person's naturalized citizenship and the cancellation of that person's certificate of naturalization if these were illegally procured or procured by concealment of material fact.

28.  INA Section 316, 8 U.S.C. § 1427, sets forth the requirements for legally

procuring naturalized citizenship. INA Section 316(a)(1), applicable to Defendant, provides:

> No person, except as otherwise provided in this title, shall be naturalized unless such petitioner, (1) immediately preceding the date of filing his petition for naturalization has resided continuously, <u>after being lawfully admitted for permanent residence</u>, within the United States . . . [emphasis added].

## COUNT ONE

### Illegal Procurement of United States Citizenship: Unlawful Admission under the Refugee Relief Act
(Personal Advocacy or Assistance in Persecution)

29. Plaintiff realleges and incorporates by reference paragraphs 1 through 26 of this Complaint.

30. As set forth in paragraphs 21 through 24, *supra*, Defendant entered this country under the provisions of the RRA.

31. RRA Section 14(a) provides:

> No visa shall be issued under this Act to any person who personally advocated or assisted in the persecution of any person or group of persons because of race, religion, or national origin.

32. Defendant's service as an armed SS Death's Head guard constitutes personal advocacy or assistance in the persecution of persons because of race, religion, or national origin. As such, Defendant was legally ineligible to receive a visa to enter the United States under RRA Section 14(a).

33. Defendant's entry into the United States for permanent residence was therefore unlawful.

34. Because Defendant's admission into the United States was unlawful, his subsequent naturalization was unlawful under INA Section 316(a), 8 U.S.C. § 1427(a).

35.  Defendant's citizenship thus was illegally procured and must be revoked, as provided for in INA Section 340(a), 8 U.S.C. § 1451(a).

## COUNT TWO

### Illegal Procurement of U.S. Citizenship
### (Concealment of a Material Fact or Willful Misrepresentation)

36.  Plaintiff realleges and incorporates by reference paragraphs 1 through 26 of this Complaint.

37.  Section 340(a) of the INA, 8 U.S.C. § 1451(a) mandates revocation of citizenship that was "procured by concealment of material fact or by willful misrepresentation."

38.  Defendant willfully misrepresented and concealed material facts during his immigration process by failing to disclose his service as an armed SS Death's Head guard at Sachsenhausen Concentration Camp when questioned by United States immigration officials about his wartime activities and failed to list his Sachsenhausen service on his visa application form.

39.  Defendant's citizenship thus was procured by concealment of a material fact or by willful misrepresentation and must be revoked pursuant to INA § 340(a), 8 U.S.C. § 1451(a).

## VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests:

1.  A declaration that Defendant personally assisted in Nazi persecution and procured his citizenship and Certificate of Naturalization illegally.

2.  A judgment that revokes the United States citizenship of Defendant, that sets aside the Order of the District Court of the First Judicial District at Helena, Montana, from

January 13, 1961, admitting Defendant to United States citizenship, and that cancels Defendant's Certificate of Naturalization No. 7974241, issued pursuant to that order.

3. A judgment forever restraining and enjoining Defendant from claiming any rights, privileges, benefits, or advantages under any document evidencing United States citizenship.

4. A judgment requiring Defendant to surrender immediately and deliver to the Attorney General his Certificate of Naturalization No. 7974241, his United States passport (should he have one) and any other indicia of United States citizenship.

5. Such other relief as may be lawful and proper.

Dated: 9/17/07

Respectfully submitted,

_J.A. Taylor (by RC)_
JEFFREY A. TAYLOR
United States Attorney
for the District of Columbia

RUDOLPH CONTRERAS
Chief, Civil Division
U.S. Attorney's Office
District of Columbia
501 3rd Street, N.W.
Suite 4500
Washington, DC 20530
(202)514-7151

ELI M. ROSENBAUM
Director

SUSAN L. SIEGAL
Principal Deputy Director

EDGAR CHEN
Trial Attorney
Office of Special Investigations
Criminal Division
U.S. Department of Justice
10th St. & Constitution Ave., NW
John C. Keeney Building, Ste. 200
Washington, D.C. 20530
(202) 616-2492
(fax) (202)616-2491
edgar.chen@usdoj.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action |
| v. ) | No. |
| ) | |
| MARTIN HARTMANN, ) | |
| ) | |
| Defendant. ) | |

**AFFIDAVIT OF GOOD CAUSE IN SUPPORT OF COMPLAINT**

I, Elizabeth B. White, declare under penalty of perjury as follows:

1. I am the Deputy Director and Chief Historian of the Office of Special Investigations, Criminal Division, United States Department of Justice, and, as such, am personally familiar with the facts concerning Martin Hartmann's wartime service and his subsequent immigration and naturalization. In my capacity as Chief Historian I have access to, and have personally reviewed, evidence reflecting Mr. Hartmann's wartime service and the official United States Government documents concerning his immigration and naturalization. It is with this knowledge that I declare that the following facts concerning the Defendant Martin Hartmann are correct.

2. Defendant, an ethnic German, was born on October 31, 1918, in Metiş (German: Martinsdorf) Romania.

3. On July 27, 1943, Defendant entered the Nazi Waffen SS (Armed SS), receiving the rank of SS *Schütze* (private).

4. In 1946, the International Military Tribunal at Nuremberg, Germany, held that the SS, including the Waffen SS, constituted a criminal organization involved in "the persecution and

07 1640

FILED
SEP 17 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

extermination of the Jews, brutalities and killings in concentration camps, excesses in the administration of occupied territories, the administration of the slave labor program and the mistreatment and murder of prisoners of war." *The Nuremberg Trial*, 6 F.R.D. 69, 143 (I.M.T. 1946).

5. Upon entering the Waffen SS on July 27, 1943, Defendant was assigned to the 9th Company of the SS Death's Head Guard Battalion (*Totenkopf-Wachbataillon*) at Sachsenhausen Concentration Camp (also known as "Oranienburg Concentration Camp") near Berlin, Germany, where he served as an armed guard of prisoners. He continued to serve at Sachsenhausen and its subcamps through at least April 1945.

6. Sachsenhausen Concentration Camp was a place of persecution. Sachsenhausen, like other Nazi concentration camps, was guarded by members of SS Death's Head guard units. While guarding concentration camps, members of the SS Death's Head guard units personally assisted the Nazi government of Germany in persecuting persons because of race, religion, national origin or political opinion. This persecution included, but was not necessarily limited to, forcible confinement, subjection to slave labor, deprivation of adequate food, shelter, and medical care, physical and emotional abuse, medical experimentation, torture, and killing.

7. The Sachsenhausen Concentration Camp contained work facilities where prisoners were forced to perform various types of difficult physical labor under grueling conditions. The complex also housed a crematorium, a gas chamber, a shooting pit used by firing squads, and a gallows, all of which were used for executing prisoners.

8. During the period of Defendant's service there, tens of thousands of persons were imprisoned at Sachsenhausen Concentration Camp because of their religion, national origin, race,

or political opinion and thousands died or were murdered there. Starvation and disease were rampant among the prisoner population at Sachsenhausen due to inadequate food and unsanitary conditions.

9.  Sachsenhausen prisoners deemed too ill or too weak to work were killed or transferred to other camps to be killed. Many Sachsenhausen prisoners were murdered by shooting, hanging, gassing, beating, and other means. The camp was also the site of a variety of gruesome medical experiments that killed many prisoners.

10. At Sachsenhausen Concentration Camp, the duties of a camp guard included guarding the perimeter of the camp, guarding labor details outside the camp, escorting prisoners to and from forced labor work sites, and conducting searches for escaped prisoners. Armed SS Death's Head guards were stationed in guard towers and as sentries around the perimeter of the camp and had orders to shoot to kill any prisoner attempting to escape. All guards were trained in and responsible for these duties.

11. The SS Death's Head Guard Battalion guarded Sachenhausen's main camp and its many subcamps including the Klinkerwerk facility located in nearby Lehnitz. The Klinkerwerk was one of Sachsenhausen's largest subcamps, originally intended to be the largest brick factory in the world. Forced labor service at the Klinkerwerk became notorious as a punishment detail for Sachsenhausen prisoners accused of violating camp rules, as well as for members of disfavored groups, including Jews and homosexuals.

12. The Defendant, armed with a rifle, stood guard over the Klinkerwerk, manned its watchtowers and operated its main gate, through which prisoners from the main camp entered and left.

13.    The Defendant also performed armed guard service at Sachsenhausen's Babelsberg subcamp.

14.    In or around April 1945, the Defendant personally escorted several prisoners in transit from Babelsberg back to Sachsenhausen, guarding them by himself.

15.    As a member of the SS Death's Head Guard Battalion Sachsenhausen, Defendant wore a uniform, was paid, and was allowed to leave the camp when not on duty.

16.    In September 1955, Defendant applied for an immigration visa under the Refugee Relief Act (RRA) of 1953, Pub. L. No. 203, 67 Stat. 400, as amended, 68 Stat. 1044 (1954), at the U.S. Consulate in Berlin, Germany.

17.    When he applied for a visa, Defendant was questioned by immigration officials about his wartime activities and whereabouts. Defendant did not disclose his guard service at Sachsenhausen. Defendant also failed to list his Sachsenhausen service or membership in the Waffen SS on his visa application form.

18.    On September 27, 1955, Defendant was issued a visa under the RRA.

19.    On October 28, 1955, Defendant, used his RRA visa to enter the United States at the Port of New York as an immigrant.

20.    On November 2, 1960, Defendant petitioned for naturalization as a United States citizen, in Helena, Montana.

21.    On January 13, 1961, Defendant was naturalized by the District Court of the First Judicial District in Helena, Montana, and received Certificate of Naturalization No. 7974241.

22.    There exists good cause for the institution of proceedings against Defendant to revoke and set aside the order admitting Defendant to naturalization and to cancel his Certificate of

Naturalization, pursuant to Section 340(a) of the Immigration and Nationality Act, 8 U.S.C. § 1451(a), because Defendant illegally procured his admission into this country and his naturalization.

23. Defendant was last known to reside at 950 Leisure World, Mesa, Arizona 85206-2433.

## DECLARATION IN LIEU OF JURAT
(28 U.S.C. § 1746)

I declare under the penalty of perjury that the foregoing is true and correct.

Elizabeth B. White
Deputy Director
Chief Historian
U. S. Department of Justice
10th & Constitution Ave. N.W.
Criminal Division
Office of Special Investigations
John C. Keeney Building
Suite 200
Washington, DC  20530
(202) 616-2492

September 13, 2007

5

E 07-1640 EGS

## CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

### I (a) PLAINTIFFS
United States of America
DOJ       //0 C/

### DEFENDANTS
Martin Hartmann, 950 Leisure World
(Mesa, Arizona 85206-2433

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

United States Department of Justice
Criminal Division, Office of Special Investigations
1301 New York Ave. NW, Suite 200
Washington, DC 20005
(202) 616-2492

ATTORNEYS (IF KNOWN)

Case: 1:07-cv-01640
Assigned To : Sullivan, Emmet G.
Assign. Date : 9/17/2007
Description: General Civil

### II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- (●) 1 U.S. Government Plaintiff
- ○ 2 U.S. Government Defendant
- ○ 3 Federal Question (U S Government Not a Party)
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

### III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

### IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

○ **A.** *Antitrust*
- ☐ 410 Antitrust

○ **B.** *Personal Injury/Malpractice*
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Medical Malpractice
- ☐ 365 Product Liability
- ☐ 368 Asbestos Product Liability

○ **C.** *Administrative Agency Review*
- ☐ 151 Medicare Act

Social Security:
- ☐ 861 HIA ((1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g)
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g)

Other Statutes
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D.** *Temporary Restraining Order/Preliminary Injunction*

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

(●) **E.** *General Civil (Other)*       OR       ○ **F.** *Pro Se General Civil*

**Real Property**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**Personal Property**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**Bankruptcy**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**Property Rights**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**Federal Tax Suits**
- ☐ 870 Taxes (US plaintiff or defendant
- ☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**Other Statutes**
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation

- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- (☒) 890 Other Statutory Actions (if not administrative agency review or Privacy Act

|  G. *Habeas Corpus/ 2255* | H. *Employment Discrimination* | I. *FOIA/PRIVACY ACT* | J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br><br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| K. *Labor/ERISA (non-employment)* | L. *Other Civil Rights (non-employment)* | M. *Contract* | N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
- ⦿ 1 Original Proceeding
- ○ 2 Removed from State Court
- ○ 3 Remanded from Appellate Court
- ○ 4 Reinstated or Reopened
- ○ 5 Transferred from another district (specify)
- ○ 6 Multi district Litigation
- ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
8 U.S.C. § 1451(a), to revoke the citizenship of Defendant Martin Hartmann on the grounds of illegal procurement by fraud or misrepresentation.

**VII. REQUESTED IN COMPLAINT**   ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ _____   Check YES only if demanded in complaint   JURY DEMAND:   YES ☐   NO ☐

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE 9/17/07   SIGNATURE OF ATTORNEY OF RECORD _(signature)_

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I. COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.